IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

MARK A. MONTGOMERY,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.

Case No. CV 10-1037-SI

OPINION AND ORDER

Linda Ziskin
P.O. Box 2237
Lake Oswego, Oregon 97035
    Attorney for plaintiff

Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
    Attorneys for defendant

SIMON, District Judge.

Plaintiff Mark Montgomery ("Montgomery") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § § 401-33, and Supplemental Security Income ("SSI") payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. I have jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is reversed and remanded for further proceedings. Specifically, for the reasons stated below, on remand the ALJ shall consider: (1) the letter dated April 9, 2007, from Glenda Montgomery; (2) the letter dated April 27, 2009, from Glenda and Charles Montgomery and Sara Sparks; and (3) the undated letter from Ruth Beams.

## I. INTRODUCTION

Born in 1968 (Tr. 91),[1] Mr. Montgomery has an tenth-grade education with a general equivalency degree. Tr. 120. He filed applications for DIB and SSI on March 12, 2007, alleging disability since June 1, 2004 (Tr. 91, 98), due to gastric ulcers, "low immune system," "mouth problems," left-ear deafness, a heart murmur, and high blood pressure. Tr. 115. The Commissioner denied these applications initially and upon reconsideration. Tr. 44-60. An ALJ held a hearing on May 18, 2009 (Tr. 15-29), and found Mr. Montgomery not disabled on June 19, 2009. Tr. 37-43. The ALJ held the hearing by video conference from New Mexico; Mr. Montgomery and other witnesses appeared from Oregon. Tr. 17. The Appeals Council accepted additional evidence into the record, but denied review of the ALJ's decision. Tr. 3-4. This action made the ALJ's decision the final decision of the Commissioner, 20 C.F.R. § 410.670a, and Mr. Montgomery now appeals.

## II. BACKGROUND

---

[1]Citations "Tr." refer to refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on February 7, 2011 [11].

Opinion and Order, Page 2

The record before this court shows that Mr. Montgomery had a pediatric heart murmur, but that no intervention or treatment was recommended or performed during his childhood. Tr. 323-26. Mr. Montgomery has a left-ear hearing impairment, which was first characterized as "borderline normal" in 1975. Tr. 328.

Mr. Montgomery sought treatment for chest pain at several instances in 1995; imaging and electrocardiogram studies indicated no pneumonia or heart failure. Tr. 380-92. Throughout 2004 and 2005 Mr. Montgomery sought treatment for gastric ulcers with associated gastro-intestinal bleeding. Tr. 192-223, 435-64. He was hospitalized for this condition in July 2004 (Tr. 456-78), when an endoscopy study showed a large gastric ulceration. Tr. 462. Mr. Montgomery sought emergency room care for bronchitis throughout 2006, and physicians continued to diagnosis a gastric ulcer. Tr. 234, 247, 255, 261, 278, 490-507.

On May 5, 2007, an examining physician assessed chronic intermittent abdominal pain with a history of ulcer disease, probable anal fissure, very poor dentition, chronic bronchitis and a history of smoking, poor hearing in his left ear, lower back pain, hypertension, obesity, and an antisocial personality with depression and anger. Tr. 287.

On May 13, 2009, Mr. Montgomery was evaluated in conjunction with his present application for disability benefits at Outside In medical center. Tr. 513-17. The examining physician assessed "unmanaged ulcer and chronic gastric ulcer," as well as shortness of breath "complicated by cigarette habit of 20+ years." Tr. 516. She also noted that Mr. Montgomery experienced tingling or burning feet. Tr. 514, 516. This physician neither assessed nor suggested work-related limitations. Tr. 513-17.

### III. DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(a)(4)(v); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

## IV. STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947)); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## V. DISCUSSION

Mr. Montgomery challenges the ALJ's findings regarding: (1) testimony submitted by numerous lay witnesses; and (2) Mr. Montgomery's RFC as it pertains to his hearing impairment. He concludes that the ALJ should have found him disabled.

### A.    Lay Witness Testimony

Mr. Montgomery argues that the ALJ did not apply Ninth Circuit legal standards in evaluating the lay witness testimony. Pl.'s Opening Br. [18] 5-8. He does not explain the effect of the ALJ's error, *id.*, and the Commissioner asserts that the ALJ's omissions were harmless. Def.'s Br. [20], 4-5.

#### 1.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996). The omission of lay testimony is harmless only when it is inconsequential to the ultimate determination of nondisability. *Stout v. Barnhart*, 454 F.3d 1050, 1055 (9th Cir. 2005).

### 2. Analysis

Mr. Montgomery cites the ALJ's findings regarding the testimony of Sam Montgomery, Glenda Montgomery, Charles Montgomery, Sara Sparks, and Ruth Beams.

#### a. Sam Montgomery

Mr. Montgomery's nephew, Sam Montgomery, testified before the ALJ at Mr. Montgomery's May 18, 2009, hearing. Tr. 27-28. He stated that Mr. Montgomery has "pain with his sides a lot" and, in the weeks before the hearing, was experiencing left leg pain, headaches, and breathing difficulties. Tr. 28. Sam Montgomery also testified that these conditions were worse at the time of the hearing than "two or three" years prior. *Id.*

The ALJ cited Sam Montgomery's testimony, noting that Sam Montgomery has "recently observed an increase in the claimant's breathing problems, leg pain, headaches and bleeding problems." Tr. 42. The ALJ found the medical evidence "inconsistent" with Sam Montgomery's assertion that Mr. Montgomery's symptoms had recently increased. *Id.* Finally, the ALJ also commented that the medical evidence "does not support" Sam Montgomery's testimony. *Id.*

The record before this court shows that Mr. Montgomery sought no medical treatment after December 2007. Tr. 427. On May 13, 2009, an examining physician noted that Mr. Montgomery had a chronic untreated ulcer and bronchitis, as well as a burning sensation in his feet. Tr. 516. The medical record thus diverges from Sam Montgomery's testimony that Mr. Montgomery's symptoms recently worsened.

The ALJ may reject lay testimony that directly conflicts, or is inconsistent with, the medical

evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ may not, however, reject lay testimony merely because it is uncorroborated, or unsupported, by the medical evidence. *Bruce*, 557 F.3d at 1116. The ALJ's finding that Sam Montgomery's testimony was "inconsistent" or "not consistent" with the medical evidence is sufficient under this standard, and is therefore affirmed.

### b.   Glenda Montgomery, Charles Montgomery, and Sara Sparks

Mr. Montgomery's mother, Glenda Montgomery, submitted a third party function report for the record on April 9, 2007. Tr. 132-39. She also submitted letters for the record on May 20, 2007, and on April 27, 2009. Tr. 184. The April 2009 letter was co-signed by Mr. Montgomery's father, Charles Montgomery, and niece, Sara Sparks.

#### i.   April 9, 2007, Function Report

Ms. Montgomery stated that she sees Mr. Montgomery daily for chats, grocery shopping and activities associated with the Blazers NBA team. Tr. 132. She also wrote that she had "no idea" what Mr. Montgomery does each day. *Id.* Ms. Montgomery stated that Mr. Montgomery helps his nephew, and completes his own personal care without assistance. Mr. Montgomery prepares his own food, but does this slowly, and at a slower pace than twelve months ago. Tr. 134. Ms. Montgomery wrote that Mr. Montgomery does all of his own housework, but she has no idea how long this takes him. *Id.*

Ms. Montgomery also wrote that Mr. Montgomery walks, but must rest often, and uses public transportation. Tr. 135. He shops in stores once a month with his parents and is "slow" in doing this. Tr. 135. Mr. Montgomery's daily hobbies include reading, watching television, fishing, when able, and "chatting." Tr. 136. He rarely goes places. *Id.* Finally, Ms. Montgomery endorsed limitations in Mr. Montgomery's ability to lift, squat, bend, reach, walk, sit, kneel, hear, climb stairs,

see, and complete tasks. Tr. 137. He can walk two or three blocks before resting for ten to fifteen minutes. *Id.*

The ALJ's residual functional capacity analysis limited Mr. Montgomery to medium work. Tr. 41. Medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." A determination that a claimant can perform medium work also specifies that a claimant can perform light work. 20 C.F.R. §§ 404.1567(c); 416.967(c). Light work may require "a good deal of walking and standing." 20 C.F.R. §§ 404.1567(b); 416.967(b).

This court, therefore, must determine whether, had the ALJ credited Ms. Montgomery's testimony, the ALJ would reach the same disability determination. *Stout*, 454 F.3d at 1056. Ms. Montgomery did not specify what weight Mr. Montgomery could lift, endorsing only that he had difficulty lifting. Tr. 137. She clearly stated, however, that Mr. Montgomery could walk only two or three blocks before requiring rest. *Id.* Such a limitation is inconsistent with medium work, which may include jobs with "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b-c); 416.967(b-c). Ms. Montgomery's testimony points to a different disability conclusion than that reached by the ALJ. In such circumstances, the ALJ's findings cannot be sustained in the absence of the ALJ providing reasons for rejecting this testimony. *Stout*, 454 F.3d at 1056. The effects of this error are discussed below.

### ii.     May 20, 2007, Letter

Ms. Montgomery also submitted an additional statement for the record on May 20, 2007. Tr. 159-60. In that statement, she describes Mr. Montgomery's childhood cardiac condition and history in special education. Tr. 159. She also describes Mr. Montgomery's left ear hearing

impairment, stating that it was caused by a childhood bicycle accident. *Id.* She noted Mr. Montgomery's poor dentition and bleeding ulcer, which is a "big source of pain." *Id.* Ms. Montgomery also noted that Mr. Montgomery has "an owee [sic] somewhere on his left side and no doctor has said what it is" and that he has sleep apnea. Tr. 160.

Ms. Montgomery's May 2007 statement does not describe work-related limitations that exceed those articulated in the ALJ's RFC assessment. An ALJ's omission of lay testimony may be harmless when fully crediting the omitted testimony does not disturb the ALJ's ultimate nondisability determination. *Stout*, 454 F.3d at 1055-1056. Because Ms. Montgomery's May 2007 statement does not describe work-related limitations beyond those assessed by the ALJ, the ALJ's omission will not be disturbed.

### iii.     April 27, 2009, Letter

Finally, on April 27, 2009, Ms. Montgomery submitted an additional letter for the record. Tr. 184. This letter was co-signed by Mr. Montgomery's father, Charles Montgomery and Mr. Montgomery's niece, Sara Sparks. *Id.* Their letter states that Mr. Montgomery has "many physical issues," and that "we have witnessed blood in his urine, in his stool and after choking he has vomited blood. We feel he is seriously ill and unable to work." Tr. 184. They also described Mr. Montgomery's pallor, "stinging in his feet which makes it hard [for] him to walk," and his hearing impairment. *Id.*

The only work-related limitation described by the April 2009 letter relates to Mr. Montgomery's difficulty walking, particularly as it relates to his feet. The ALJ did not consider this limitation in his RFC assessment. Tr. 41-43. Further, as noted, the ALJ found that Mr. Montgomery could perform medium work (Tr. 41), which requires walking. 20 C.F.R. §§ 404.1567(b-c);

416.967(b-c). Therefore, crediting the letter of April 27, 2009, letter could lead to a different disability determination. In such circumstances, the ALJ's omission cannot be found harmless. *Stout*, 454 F.3d at 1055-1056. The effects of this error are discussed below.

### c. Ruth Beams

Mr. Montgomery's sister, Ruth Beams, submitted an undated handwritten statement for the record. Tr. 185-86. She wrote, "I have observed [Mr. Montgomery] looking as though most of the blood in him has been drained out of him," and that "when walking he needs to sit quite often just to keep his feet from burning." Tr. 185. She also wrote that Mr. Montgomery "is having a lot of strong headaches." Tr. 186.

As with the other items discussed above, this statement describes limitations pertaining to Mr. Montgomery's ability to walk, which the ALJ did not consider. This testimony is inconsistent with the ALJ's finding that Mr. Montgomery could perform medium work, and the ALJ's omission is not harmless, for the reasons articulated above. The effects of this error are discussed below.

In summary, the ALJ's assessment of Sam Montgomery's hearing testimony and Ms. Montgomery's May 20, 2007, letter are affirmed. The ALJ's omissions regarding Ms. Montgomery's April 9, 2007, letter; the April 27, 2009 letter signed by Ms. Montgomery, Charles, Montgomery, and Ms. Sparks; and Ms. Beams' undated statements are not sustained.

### B. RFC Analysis

Mr. Montgomery asserts that the ALJ's assessment of Mr. Montgomery's RFC between steps three and four in the sequential disability analysis was "incomplete." Pl.'s Opening Br. 8. He specifically argues that the ALJ failed to include limitations pertaining to Mr. Montgomery's hearing deficit in this assessment, but does not otherwise challenge the ALJ's RFC assessment.

### 1. Standards: RFC

Once a claimant establishes a medically-determinable impairment that does not meet a "Listed" disorder at step three in the sequential proceedings, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e); 416.920(e). The RFC represents all of a claimant's work-related limitations, including non-severe limitations. 20 C.F.R. §§ 404.1545(a)(1-2); 416.945(a)(1-2). In making this assessment, the ALJ considers "all of the relevant medical and other evidence," as well as a claimant's testimony and lay testimony describing the claimant's limitations. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).

### 2. Analysis

Mr. Montgomery's initial disability application cited his hearing impairment as a reason for his disability. Tr. 115. Mr. Montgomery, however, who was represented by counsel, did not assert work-related impairments stemming from his hearing difficulties at his hearing. The record shows that, in 1975, at age seven, Mr. Montgomery had "borderline normal hearing" on the left side, and no impairment on the right. Tr. 328. A 2007 examination performed for Disability Determination Services[2] states only that Mr. Montgomery has "poor hearing" in his left ear, and does not indicate associated limitations. Tr. 287.

Mr. Montgomery's challenge to the ALJ's RFC assessment now argues that the ALJ should have asked the vocational expert to consider the effects of his alleged hearing limitation in addressing Mr. Montgomery's past relevant work at step four in the sequential disability analysis. Pl.'s Opening Br. 9. Mr. Montgomery's present counsel fails to acknowledge that his hearing

---

[2]DDS is a federally-funded state agency that makes disability eligibility determinations for the Social Security Administration. 20 C.F.R. §§ 404.1503; 416.903.

Opinion and Order, Page 12

counsel did not ask the vocational expert to consider such a limitation when given the opportunity. *Id.*; Tr. 29. The claimant must "in general" prove that he is disabled, 20 C.F.R. §§ 404.1512; 416.912, and squarely bears the burden of establishing disability at steps one through four of the sequential proceedings. *Tackett*, 180 F.3d at 1098. Further, the claimant cannot raise arguments before this court that he failed to raise at his hearing. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (citing *Avol v. Sec'y Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir. 1989)). In these circumstances, this court cannot now conclude that the ALJ made an erroneous omission regarding Mr. Montgomery's hearing impairment in his questions to the vocational expert. Mr. Montgomery's challenge to the ALJ's RFC assessment based upon this alleged omission therefore fails.

**C.    Remand**

The ALJ erroneously failed to consider Ms. Montgomery's April 9, 2007, letter addressing Mr. Montgomery's walking limitations; the April 27, 2009, letter submitted by Ms. Montgomery, Charles Montgomery, and Ms. Sparks addressing Mr. Montgomery's standing and walking limitations pertaining to his feet; and the undated letter from Ruth Beams on those issues. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under

Opinion and Order, Page 13

the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F2d 871, 348 (9th Cir. 2003) (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's omission of the lay testimony regarding Mr. Montgomery's walking and standing limitations is erroneous for the reasons established above. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step four in the sequential disability analysis are therefore not based upon the proper legal standards.

It is not clear, however, from the record that crediting the omitted evidence will establish that Mr. Montgomery is disabled at step five in the sequential proceedings. Mr. Montgomery makes no assertion of disability at step five. Neither the ALJ nor Mr. Montgomery's counsel asked the vocational expert to testify regarding the effect of the omitted limitations upon Mr. Montgomery's ability to perform work in the national economy at step five in the sequential proceedings.

Thus, outstanding issues must be resolved before a determination that an award of benefits is inappropriate. Accordingly, the court declines to credit the improperly omitted testimony. *Luna*,

623 F.3d at 1035. The matter must be remanded for further proceedings to address the indicated testimony. If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## VI. CONCLUSION

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order by considering the lay testimony that was incorrectly omitted from the ALJ's analysis. That testimony consists of: (1) the letter dated April 9, 2007, from Glenda Montgomery; (2) the letter dated April 27, 2009, from Glenda and Charles Montgomery and Sara Sparks; and (3) the undated letter from Ruth Beams.

IT IS SO ORDERED.

Dated this 4th day of January, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge